UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DENNIS L. MARTIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case Number 1:12-cv-00970 (RC) |
| v. ) | |
| ) | Honorable Rudolph Contreras |
| QUINCE T. BRINKLEY, JR., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DENNIS L. MARTIRE'S MOTION TO TRANSFER VENUE**

This action involves the unlawful and politically-motivated attempt by the Governor of Virginia, Defendant Robert F. McDonnell, to remove Plaintiff Dennis L. Martire from the Board of Directors of the Metropolitan Washington Airports Authority ("MWAA"). While this case was stayed pending a hearing in a related case in the Circuit Court for Fairfax County, Virginia, Governor McDonnell filed a Motion to Dismiss or, Alternatively, to Transfer Venue, asserting sovereign immunity and seeking dismissal for lack of personal jurisdiction and venue. Docket No. 6. Mr. Martire is plainly entitled to challenge the Governor's attempt to remove him in this Court. *See* 49 U.S.C. § 49104(c); *Alcorn v. Wolfe*, 827 F. Supp. 47 (D.D.C. 1993); *Fed. Firefighters Ass'n, Local 1 v. Metro. Wash. Airports Auth.*, 1988 WL 21412, at *1 (D.D.C. Sept. 23, 1988). The Governor's arguments to the contrary are meritless. They are aimed at delaying resolution of this case and protracting the time that Mr. Martire is prevented from exercising his rights on the Board.

Notwithstanding that he previously requested transfer to the Eastern District of Virginia—the exact relief this motion seeks—the Governor now opposes this motion. Such

obstructionism demonstrates that his interest is in delay, not a fair, prompt resolution on the merits. In contrast, Mr. Martire's paramount interest is vindication, on the merits, as quickly as possible. To that end, Mr. Martire respectfully requests this Court to transfer this case to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1404 and 1406. A transfer will render moot the Governor's challenges to personal jurisdiction and venue, thereby promoting a faster, less expensive resolution of this matter and conserving judicial resources.

**I.     Background**

MWAA was created by interstate compact between the District of Columbia and Virginia. *See generally Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991). By statute, it is independent of Virginia and its local governments, the District of Columbia, and the United States. 49 U.S.C. § 49106(a)(2). Mr. Martire was appointed by then-Governor Timothy Kaine to the MWAA Board of Directors to a term of six years. Mr. Martire's term does not expire until 2014. As with all members of the Board, Mr. Martire may be removed "only for cause, and in accordance with the laws of the jurisdiction from which he is appointed." Va. Code § 5.1-155(E); *see also* 49 U.S.C. 49106(c)(6)(C). Furthermore, consistent with the statutory independence of MWAA, Mr. Martire is protected from political interference by the Governor. *See Alcorn*, 827 F. Supp. at 53.

The Governor has attempted to remove Mr. Martire—a Democrat and union official—from the MWAA Board and to replace him with Caren Merrick, a former Republican candidate for political office. However, the Governor's action is unlawful and void. There is no cause for Mr. Martire's removal. The purported grounds for doing so are pretexts for the Governor's efforts to score political points by targeting a Democrat and a member of a union, and impermissibly to inject his political influence into MWAA during its consideration of the

2

politically controversial Dulles Corridor Metrorail Project.  *See Alcorn*, 827 F. Supp. at 53.  Mr. Martire seeks a declaratory judgment that he continues to be a *bona fide* member in good standing of the MWAA Board despite the Governor's unlawful and politically-motivated actions.

## II.     Procedural History

The Governor purported to remove Mr. Martire on Thursday, June 14, 2012.  Mr. Martire filed this action on the same day.  Docket No. 1.  On Monday, June 18, MWAA filed an action in the Circuit Court for Fairfax County, Virginia (the "Fairfax case") against Mr. Martire and Ms. Merrick for interpleader, *quo warranto*, and a declaratory judgment.  *See MWAA v. Martire, et al.*, Case No. 2012-09027 (Va. Cir. Ct.).[1]  On June 20, at a meeting of the MWAA Board, MWAA informed Mr. Martire that neither he nor Ms. Merrick would be permitted to participate, speak, or vote at the meeting until the dispute over the Board seat is settled.  Mr. Martire then filed an Application for Preliminary Injunction in this case seeking to be restored to his position on the Board.  Docket No. 2.

On June 29, the parties agreed to stay this action for thirty days (until July 27) in order to permit MWAA to file in the Fairfax case a motion for summary judgment on a narrow, potentially-dispositive procedural issue under Virginia law.  Docket No. 4.  This Court granted the parties' request for a stay by Minute Order.  As provided in the parties' stipulation, the Governor filed a Motion to Dismiss or, Alternatively, to Transfer Venue, on July 2, 2012.  Docket No. 6.

MWAA's motion for summary judgment in the Fairfax case argued that one of two state statutes—Va. Code § 2.2-108 or Va. Code § 2.24-234—must provide the procedural steps required to remove an MWAA Board member "in accordance with the laws of the jurisdiction from which he is appointed," as required by the compact.  If, as MWAA argued, Va. Code

---

[1] The Commonwealth of Virginia has intervened in the Fairfax case.

§ 24.2-234 applied, then the Governor's attempted removal of Mr. Martire was invalid as a matter of law because it was undisputed that the Governor had not complied with the requirements of that provision. The Fairfax Court, however, denied MWAA's motion on that purely procedural question under Virginia law and, along with counsel for all parties (including the Commonwealth of Virginia), agreed that further litigation on the sufficiency of cause to remove Mr. Martire remains necessary. Mr. Martire's Application for Preliminary Injunction in this case addresses that issue.

On July 20, as required by this Court, the parties filed a Joint Status Report requesting that the stay in this case end, as originally scheduled, on July 27. The parties proposed a schedule for filing their respective responses to Mr. Martire's Complaint and Preliminary Injunction and the Governor's Motion to Dismiss or, Alternatively, to Transfer Venue. Docket No. 11. The Joint Status Report also permits the parties to file additional motions regarding threshold issues by August 1, 2012.[2]

Today, in addition to this Motion to Transfer Venue, Mr. Martire is filing a First Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15. The Amended Complaint adds Ms. Merrick and MWAA as parties.

### III. Argument

#### A. The Court Should Transfer This Case to the Eastern District of Virginia

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). The Court may also

---

[2] Also on July 20, the Commonwealth of Virginia filed a motion for a temporary injunction in the Fairfax case seeking to have Ms. Merrick seated immediately. The Commonwealth withdrew its motion on July 23 and then refiled it on July 25, 2012. A hearing on that motion has been scheduled for August 13, 2012.

transfer a case in order to cure defects in venue. 28 U.S.C. § 1406(a). A transfer of this case to the Eastern District of Virginia will cure the Governor's personal jurisdiction and venue concerns, thereby bypassing ancillary and procedural issues in favor of reaching the merits of Mr. Martire's unlawful removal as rapidly as possible.[3]

As the moving party, Mr. Martire bears the burden of establishing that transfer is proper. *See Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 39 (D.D.C. 2010). The Governor, however, took on and met that burden himself in his Motion to Dismiss or, Alternatively, to Transfer Venue.[4] As such, the Governor already demonstrated and agreed that Mr. Martire can satisfy the two showings required of him to succeed on this motion: (a) that this action originally could have been brought in the Eastern District of Virginia because Governor McDonnell, Ms. Merrick, and MWAA's physical facilities are located in Virginia, and (b) that considerations of convenience and the interest of justice weigh in favor of transfer. *See id.*; *see also* Mem. of Law in Supp. of Gov. McDonnell's Mot. to Dismiss or, Alternatively, to Transfer Venue at 21-25.

When assessing the considerations of convenience and the interest of justice in this context, courts consider several private and public interest factors.

---

[3] The Governor also argues that the case should be dismissed on sovereign immunity grounds and for failure to join Ms. Merrick as an indispensible party. However, it is not necessary for this Court to address the Governor's sovereign immunity claim before transferring the case. *In re Bd. of Regents*, 435 Fed. App'x 945, 947 (Fed. Cir. 2011). He will be permitted to raise the sovereign immunity question in the Eastern District of Virginia. *See id.*; *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 553-54 (D. Md. 2008). Furthermore, Mr. Martire has filed today a First Amended Complaint that adds Ms. Merrick as a party. To the extent that Ms. Merrick would raise personal jurisdiction or venue arguments in this Court, they, too, would be cured by transferring this case, further militating in favor of granting this Motion.

[4] In a reversal of position, the Governor has not consented to this motion despite his previous request to transfer this case. Regardless of the Governor's new position, "the interests of justice favor transfer over dismissal . . . ." *Ridgely v. Chao*, 2006 WL 626919, at *3 (D.D.C. Mar. 13, 2006) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).

5

> "Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home."

*Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006).

With respect to the private factors, Mr. Martire waives the privilege of selecting this Court as his forum, the Governor has already represented to this Court his preference for the Eastern District of Virginia, and MWAA does not oppose transfer and is physically located there. Further, much of the conduct surrounding Mr. Martire's unlawful removal from the MWAA Board occurred at the hands of the Governor and his agents in the Eastern District of Virginia.[5]

As the Governor already has argued, the public interest factors are also consistent with transfer. Although MWAA's status as a creature of a regional interstate compact renders the present conflict a regional, rather than local, issue, Mr. Martire was appointed by the former Governor of Virginia and is being harmed by the current Governor of Virginia. Moreover, when interpreting interstate compacts, courts may look to state law to the extent it is not inconsistent with the compact. *See, e.g.*, *State ex rel. Dyer v. Sims*, 341 U.S. 22, 28 (1951). Here, the court that interprets the MWAA compact in this case will look, at least in part, to Virginia law, with which the Eastern District of Virginia is likely relatively more familiar. Finally, this Court has recognized that the dockets of the Eastern District of Virginia are less congested than those of this Court. *Parkridge 6, LLC v. Dep't of Transp.*, 772 F. Supp. 2d 5, 8-9 (D.D.C. 2009).

---

[5] Given the proximity of this Court to the Eastern District of Virginia, the remaining private factors—convenience of parties or witnesses, or the accessibility of evidence—do not materially favor either court. *See Onyeneho*, 466 F. Supp. 2d at 6. To the extent there is any difference on the margins, Virginia arguably could be favored because of the parties' residencies and locations.

Accordingly, as the Governor previously argued, transfer to the Eastern District of Virginia is appropriate.

Finally, transfer will dramatically streamline the procedural issues in this case. Transfer would cure the Governor's personal jurisdiction and venue concerns. Efficiency and convenience therefore counsel in favor of transfer. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (courts may address forum issues before jurisdictional issues to promote convenience and judicial economy). Indeed, transferring the case would facilitate consideration of any remaining questions by stripping away the unnecessary threshold issues.[6]

### B. The Court Should Stay Deadlines in This Case Pending Resolution of This Motion

Under the schedule proposed by the parties in the July 20 Joint Status Report, Mr. Martire is required to respond to the Governor's motion to dismiss on August 1, 2012.[7] Because Mr. Martire's Motion to Transfer, if granted, will dramatically narrow the scope of the

---

[6] Although the Governor will be permitted to continue to press his sovereign immunity argument following transfer, *see In re Bd. of Regents*, 435 Fed. App'x at 947, he will not be successful. His contention that a suit against him is, in effect, a suit against the Commonwealth is fundamentally flawed for several reasons. His assertion of immunity is "reminiscent of the losing argument in *Ex Parte Young*." *Vann v. Kempthorne*, 534 F.3d 741, 750 (D.C. Cir. 2008). The Governor "imagines a world where *Ex Parte Young* suits cannot proceed if they will have any effect on a sovereign. But that is what *Ex Parte Young* suits have always done." *Id.* at 754. Moreover, the Commonwealth's interest in the affairs of MWAA does not render it an indispensible party under Federal Rule of Civil Procedure 19. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180-81 (9th Cir. 2012). Finally, to the extent that Mr. Martire's removal implicates the Virginia MWAA laws, those statutes have been "transform[ed]" into federal law by virtue of the Supremacy Clause, *Cuyler v. Adams*, 449 U.S. 433, 438 (1981), rendering violations of the compact squarely within the scope of the *Ex Parte Young* doctrine.

[7] If the Court were not to adopt the parties' proposed schedule as to the Governor's motion to dismiss, Mr. Martire's response would be due on August 10—fourteen days after the lifting of the stay on July 27. In the event that the case is not transferred, Mr. Martire reserves the right to respond fully to the Governor's motion.

Governor's motion, it would be inefficient and costly to require additional briefing at this time of all the issues the Governor's motion raises, many of which would be mooted by transfer. Accordingly, Mr. Martire requests that the Court stay the deadlines applicable to the Governor's motion and Mr. Martire's Application for a Preliminary Injunction pending resolution of his motion to transfer. If the motion is granted, Mr. Martire requests that the briefing schedule be set after such transfer is effectuated by a judge in the Eastern District of Virginia. *See, e.g.*, *Solar v. Annetts*, 707 F. Supp. 2d 437, 443 (S.D.N.Y. 2010).

## IV. Conclusion

For the reasons set forth above, the Court should grant Mr. Martire's Motion to Transfer Venue to the Eastern District of Virginia.

Respectfully Submitted,

By  /s/ Kevin M. Hodges
Kevin M. Hodges (D.C. Bar No. 430130)
J. Andrew Keyes (D.C. Bar No. 452377)
Catherine S. Duval (D.C. Bar No. 489643)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202 434-5029
E-Mail: khodges@wc.com
           akeyes@wc.com
           kduval@wc.com

*Attorneys for Plaintiff Dennis L. Martire*

Dated: July 27, 2012